UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PUBLIC CITIZEN, INC.,            )
                                 )
            Plaintiff,           )
                                 )
      v.                         )         Civ. Action No. 04-0463 (RJL)
                                 )
NORMAN Y. MINETA, et al.,        )
                                 )
            Defendants.          )
                                 )

## MEMORANDUM OPINION
(March **30**, 2006) [#17, #18, #22, #27]

Plaintiff, Public Citizen, Inc. ("Public Citizen") brought this action against Norman Y. Mineta, Secretary, United States Department of Transportation, under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, challenging regulations promulgated by the National Highway Traffic Safety Administration's ("NHTSA" or "agency") which categorically exempt from disclosure certain types of data under the Freedom of Information Act ("FOIA") maintained by the automobile and tire manufacturing industry. Alliance of Automobile Manufacturers, Inc. ("Automobile Manufacturers") entered the action as an intervenor-defendant, and Rubber Manufacturers Association ("Rubber Manufacturers") entered the action as an intervenor-defendant and cross-claimant. Presently before the Court are cross-motions for summary judgment. Upon due consideration of the parties'

submissions, the relevant law, and the entire record herein, the Court finds that the agency's Notice of Proposed Rulemaking ("NPRM") failed to provide adequate notice and opportunity to comment and that the final rule was not the logical outgrowth of the proposed rule. Accordingly, the Court GRANTS IN PART and DENIES IN PART Public Citizen's motion for summary judgment and therefore GRANTS IN PART and DENIES IN PART Mineta's, Alliance's and RMA's cross-motions for summary judgment, and REMANDS the matter to NHTSA for further action as it may wish to take in light of this holding.

## BACKGROUND

On October 11, 2000, Congress passed the Transportation Recall Enhancement, Accountability, and Documentation ("TREAD") Act, which requires automobile manufacturers to submit various types of data to NHTSA pursuant to "early warning" regulations ("EWR"). 49 U.S.C. § 30166(m). The TREAD Act directed the Secretary of Transportation to institute rulemaking proceedings to implement the EWR requirements. 49 U.S.C. § 30166(m)(1). In accordance with this mandate, NHTSA published the final EWR regulation on July 10, 2002. As summarized by Defendant Mineta, the data submitted to NHTSA under the EWR regulation includes:

- Production numbers (cumulative total of vehicles or items of equipment manufactured in the year);
- incidents involving death or injury based on claims and notices received by the manufacturer;
- claims relating to property damage received by the manufacturer;
- warranty claims paid by the manufacturer (generally for repairs on relatively new products) pursuant to a warranty program (in the tire industry these are warranty adjustment claims);

2

- consumer complaints (a communication by a consumer to the manufacturer that expresses dissatisfaction with the manufacturer's product or performance of its product or an alleged defect; and
- field reports (prepared by the manufacturer's employees or representatives concerning failure, malfunction, lack of durability or other performance problem of a motor vehicle or item of motor vehicle equipment.

Def. Mineta's Mem. Supp. Summ. J. at 6.

On April 30, 2002, NHTSA published a Confidential Business Information ("CBI") NPRM in the Federal Register. *See* 67 Fed. Reg. 21,198 (Apr. 30, 2002). NHTSA stated that the purposes of the proposed rule was "to amend the regulation on Confidential Business Information [set forth at 49 C.F.R. Part 512]," "to simplify and improve the clarity of the regulation," and "to ensure the efficient processing of requests for confidential treatment and proper protection for sensitive business information received by NHTSA." *Id.* The NPRM stated that "the proposal would continue to provide that the agency may issue class determinations, under which NHTSA decides that a class of information is presumed to cause competitive harm if released." *Id.* at 21,199. In determining what classes of information would be presumed to cause competitive harm if released, the agency considered the types of information that is submitted to the agency and the types of information that the agency "is likely to receive in the future, such as pursuant to the new 'early warning' requirements." *Id.* at 21,200. When discussing the presumption that certain information would be deemed to not cause competitive harm, the agency stated that a manufacturer who feels that the release of the information "may result in competitive harm, may seek to rebut the

3

presumption and claim confidential treatment based on competitive harm." *Id.* Alternatively, if the information that a manufacturer submits to NHTSA falls within the class of information that is presumed to cause competitive harm, the manufacturer "may not seek confidential treatment for that information unless the submitter also certifies that appropriate measures have been taken to maintain its confidentiality and that it has not been released to the public." *Id.* Specifically addressing the material that is required to be submitted to NHTSA under the EWR requirements, the NPRM stated that

> We are also interested in receiving comments regarding whether any of the proposed class determinations should be applicable to the material to be submitted under the agency's "early warning" regulations and whether any additional class determinations should be established. . . . The agency seeks comments regarding whether the agency should presumptively determine that these (or a subset of these) types of documents would or would not cause competitive harm to the submitter if released.

*Id.* at 21,200. NHTSA required that all comments be received by July 1, 2002. *Id.* at 21,198. Public Citizen did not submit comments during the specified period, but did meet with NHTSA officials on October 17, 2002 and subsequently submitted late comments on or about November 27, 2002. (Pl.'s Mem. Supp. Summ. J. at 6-7; Def. Mineta's Statement of Material Facts As To Which There Is No Genuine Issue ¶ 6 ("Def. Mineta's Statement of Material Facts").)

On July 28, 2003, NHTSA published the initial final CBI rule. *See* 68 Fed. Reg. 44,209 (July 28, 2003). The initial final rule stated that certain classes of EWR data (warranty claim data, field report information, consumer complaint data, and production data,

4

other than light vehicles) would cause competitive harm and were therefore exempt from disclosure under Exemption 4 of FOIA. 49 C.F.R. § 512, App. C (2003). Additionally, the agency rejected suggestions to adopt similar class determinations for EWR data on incidents involving death or injury and claims of damage to property. *See* 68 Fed. Reg. at 44221-22. The initial final rule did not provide, however, that any of the EWR data would be *presumed* to cause, or not cause, competitive harm as the NPRM indicated. *Compare* 67 Fed. Reg. at 21,200, *with* 68 Fed. Reg. at 44,216-26, 44,232. Public Citizen Litigation Group ("Public Citizen"), Rubber Manufacturers, and Automobile Manufacturers all filed administrative petitions for reconsideration of the initial final rule with NHTSA. 69 Fed. Reg. 21,409, 21,410 (April 21, 2004). Public Citizen sought to require disclosure of all EWR data on the ground that NHTSA was not authorized to adopt class determinations. *Id.* at 21,411. The Rubber Manufacturers sought confidential treatment of all EWR data, including incidents of death, injury and property damage, under FOIA Exemption 3, or in the alternative under FOIA Exemption 4. *Id.* Finally, Automobile Manufacturers asserted that the last six digits of a vehicle's VIN should be withheld under FOIA Exemption 6. *Id.* at 21,415.

On April 21, 2004, NHTSA issued its final CBI rule and its response to the petitions for reconsideration. 69 Fed. Reg. 21,409 (April 21, 2004). NHTSA responded to the petitions by denying Public Citizen's request for disclosure of all EWR data and Ruber Manufacturers' request for confidential treatment of all EWR data. *Id.* at 21,410. Furthermore, NHTSA granted the Rubber Manufacturers' reconsideration request to create

a confidential class determination for common green tire data pursuant to FOIA Exemption

4 and granted the Automobile Manufacturers' reconsideration request to create confidential

class determination for the last six digits of VIN numbers pursuant to FOIA Exemption 6.

*Id.* at 21,414-16.  In response to the issuance of the initial final rule, Public Citizen filed its

complaint in the instant action on March 22, 2004. (Dkt. #1.)

## ANALYSIS

### I.    STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the record demonstrate that

"there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment

may support its motion by "identifying those portions of 'the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any,' which it

believes demonstrate the absence of a genuine issue of material fact." *See Celotex v. Catrett*,

477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  In opposing summary judgment,

the "nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)).

The Court must view the facts in the light most favorable to the non-movant, giving the non-

movant the benefit of all justifiable inferences derived from the evidence in the record.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In this case, where cross-motions

6

for summary judgment are at issue, the Court draws all reasonable inferences regarding the assertions made in a light favorable to the non-moving party. *Flynn v. Dick Corp.*, 384 F. Supp. 2d 189, 192 (D.D.C. 2005). The Court will "grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 383 F. Supp. 2d 1, 3 (D.D.C. 2005).

In actions brought under the APA, an agency's final rule or action will be upheld unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 5 U.S.C. § 706(2)(A) (2000); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994), *Envtl. Integrity Project v. EPA*, 425 F.3d 992, 995 (D.C. Cir. 2005). When promulgating an agency rule, the agency must provide adequate notice and opportunity to comment on the proposed rule. 5 U.S.C. § 553. If the agency fails to provide this notice and opportunity to comment or the notice and comment period are inadequate, the "regulation must fall on procedural grounds, and the substantive validity of the change accordingly need not be analyzed." *AFL-CIO v. Donovan*, 757 F.2d 330, 338 (D.C. Cir. 1985) ("AFL-CIO")

## II.    THE AGENCY HAS THE AUTHORITY TO MAKE CATEGORICAL CONFIDENTIALITY DETERMINATIONS ABOUT CLASSES OF EWR DATA

An administrative agency may choose categorical rulemaking over individual adjudications "when a case fits into a genus in which the balance characteristically tips in one direction." *United States Dep't of Justice v. Reporter's Comm. for Freedom of the Press*,

489 U.S. 749, 776 (1989) (holding that the Department of Justice could treat rap sheets as categorically confidential because the privacy interest in maintaining the confidentiality of rap-sheet information will always be high under FOIA Exemption 7) ("Reporter's Committee"). Categorical exemptions may also be permitted based on "[c]onsiderations of administrative necessity" even though not explicitly prescribed in the statute. *Ala. Power Co. v. Costle*, 636 F.2d 323, 358 (D.C. Cir. 1979). The Supreme Court has recognized that case-by-case adjudications are not required if the use of categorical rulemaking would not be detrimental to the implementation of a regulatory scheme. *See Fed. Power Comm'n v. Texaco, Inc.*, 377 U.S. 33, 44 (1964) (individual hearings for thousands of individuals who apply for certificates of public convenience and necessity under the Natural Gas Act would prolong and cripple the process of regulation); *see also Weinberg v. Bentex Pharmaceuticals, Inc.*, 412 U.S. 645, 653 (1973) (case-by-case adjudications are not required when the regulatory scheme "would be severely undermined, if not totally destroyed").

In the context of the present case, the promulgation of categorical rules was necessary to allow the agency to administer the EWR program effectively. The agency argues that "to proceed by individual reviews of confidentiality requests, rather than by rule, would undermine NHTSA's ability to implement the EWR regulations, requiring significant reallocations of agency resources from information review and analysis to individualized reviews of requests for confidentiality of EWR data." (Def. Mineta's Mem. Supp. Summ. J. at 10.) NHTSA asserts, and Public Citizen does not dispute, that the EWR regulation

8

requires manufacturers to file comprehensive quarterly reports and that during the first reporting period, EWR reports were submitted by over 300 manufacturers. (Def. Mineta's Statement of Material Facts at 8; Pl.'s Response to Def. Mineta's Statement of Material Facts at 8.) In light of what appears to be a detailed and comprehensive data reporting program, NHTSA was justified in making categorical rules to manage the tasks assigned to it by Congress under the TREAD Act.

Additionally, the choice "between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947). Public Citizen argues that *Chenery* is not applicable because it presupposes that Congress has authorized the agency to make the choice between rulemaking and adjudication. (Pl.'s Mem. Supp. Summ. J. at 11.) Public Citizen is not able, however, to cite to any statute or legislative history to support the proposition that Congress did not want to enable the agency to make this determination. Public Citizen does cite to cases that support the idea that agency rules must be rooted in a grant of power by Congress and subject to limitations that Congress imposes. (*Id.* at 10.) In the TREAD Act, Congress required that "the Secretary [of Transportation] shall initiate a rulemaking proceeding to establish early warning reporting requirements for manufacturers of motor vehicles and motor vehicle equipment to enhance the Secretary's ability to carry out the provisions of this chapter." 49 U.S.C. § 30166(m)(1). Congress also granted the agency discretion to determine how the information will be reviewed and the manner and form of

9

reporting.  49 U.S.C. § 30166(m)(4).  The plain language of the statute gives the agency substantial leeway to implement the requirements of the Act.  NHTSA promulgated categorical rules in furtherance of its statutory mandate and not in violation of any Congressional command.

Finally, NHTSA's CBI Rule would apply existing FOIA Exemptions and does not amount to substantive rulemaking.  Public Citizen's main argument against the CBI Rule is that the rule creates a new exemption under FOIA, which an agency is not empowered to do in the absence of Congressional authorization. (Pl.'s Mem. Supp. Summ. J. at 9.)  However in its amended CBI Rule, NHTSA specifically stated that the agency "determined that the confidentiality of the early warning submissions should be reviewed under Exemption 4 of FOIA relating to confidential business information."  68 Fed. Reg. at 44,216.  Similarly, NHTSA made a class determination with respect to the last six digits of a vehicle's VIN by applying FOIA Exemption 6.  69 Fed. Reg. at 21,416.  NHTSA never asserted any authority to create new exemptions under FOIA, nor did it attempt to do so.  Rather than attempting to create a new FOIA exemption, the agency used the exemptions provided by Congress as a basis for its categorical determinations.

Therefore, NHTSA was authorized by law to make categorical class determinations because individual determinations as to the confidentiality of the data submitted would adversely affect the agency's regulatory scheme and because the Supreme Court has recognized the ability of agencies to proceed by rulemaking rather than by individual

adjudications unless Congress has otherwise specified. *See Fed. Power Comm'n*, 377 U.S. at 44.

## II.   THE NOTICE OF PROPOSED RULEMAKING DID NOT PROVIDE ADEQUATE NOTICE AND OPPORTUNITY TO COMMENT AS THE FINAL RULE IS NOT A LOGICAL OUTGROWTH OF THE PROPOSED RULE.

When an agency seeks to promulgate a rule, the APA requires that the agency publish notice of the rule in the Federal Register and then give interested parties an opportunity to comment.  5 U.S.C. § 553.  The notice must contain "either the terms or substance of the proposed rule or a description of the subjects and issues involved."  5 U.S.C. § 553(b)(3).  If notice is inadequate, the "regulation must fall on procedural grounds, and the substantive validity of the change accordingly need not be analyzed."  *AFL-CIO v. Donovan*, 757 F.2d 330, 338 (D.C. Cir. 1985) ("AFL-CIO").

An agency satisfies the notice requirement when the final rule constitutes a "logical outgrowth" of the proposed rule. *Northeast Md. Waste Disposal Auth. v. EPA*, 358 F.3d 936, 951 (D.C. Cir. 2004) ("Northeast Maryland").  "A rule is deemed a logical outgrowth if interested parties 'should have anticipated' that the change was possible, and thus reasonably should have filed their comments on the subject during the notice-and-comment period." *Id.* at 952 (quoting *City of Waukesha v. EPA*, 320 F.3d 228, 245 (D.C. Cir. 2003)).  Furthermore, the key focus in assessing logical outgrowth is "whether the purposes of notice and comment have been adequately served." *Fertilizer Inst. v. EPA*, 935 F.2d 1303, 1311 (D.C. Cir. 1991) ("Fertilizer Institute").  Our Circuit has stated that "[t]his means that a final rule will be

11

deemed the logical outgrowth of the proposed rule if a new round of notice and comment would not provide commentators with 'their first occasion to offer new and different criticisms which the agency might find convincing.'" *Id.* (quoting *United Steelworkers of Am. v. Marshall*, 647 F.2d 1189, 1225 (D.C. Cir. 1980)). If a "final rule deviates too sharply from the proposal, affected parties will be deprived of notice and an opportunity to respond to the proposal." *AFL-CIO*, 757 F.2d at 338 (quoting *Small Refiner Lead Phase-Down Task Force v. U.S. EPA*, 705 F.2d 506, 547 (D.C. Cir. 1983). Additionally, an agency cannot "bootstrap notice from a comment" made to the proposed rule. *Fertilizer Institute*, 935 F.2d at 1312 (quoting *Small Refiner*, 705 F.2d at 549).

A final rule is not necessarily invalid for lack of notice, however, simply because the position it adopts differs from the position in the proposed rule. *AFL-CIO*, 757 F.2d at 338. Courts have not allowed for agency's to write into the proposed rule language that the agency can later point in asserting that the rule provided adequate notice, otherwise known as "catch-all notice." *Nat'l Black Media Coalition v. FCC*, 791 F.2d 1016, 1023 (2d Cir. 1986) (statement that the final rule would be promulgated as proposed in the NPRM but in accordance with any future "variants, modifications, or alternatives" did not provide parties with adequate notice of a policy shift). Catch-all notice is problematic because it allows an agency to "propose a rule and state that it might change that rule without alerting any of the affected parties to the scope of the contemplated change, or its potential impact and rationale, or any other alternatives under consideration." *Id.*

Our Circuit, in *Environmental Integrity Project v. EPA.*, 425 F.3d 992 (D.C. Cir. 2005), stated that a final rule is not the logical outgrowth of the proposed rule if the agency's final rule was the opposite of the proposed rule. *Id.* at 998. Our Circuit noted that it has "refused to allow agencies to use the rulemaking process to pull a surprise switcheroo on regulated entities." *Id.* at 996. The Court added, "[i]f the APA's notice requirements mean anything, they require that a reasonable commenter must be able to trust an agency's representations about *which particular* aspects of its proposal are open for consideration." *Id.* at 998 (emphasis in original). In that case, our Circuit vacated the final rule because a logical outgrowth of the proposed rule "does not include the Agency's decision to repudiate its proposed interpretation and adopt its inverse." *Id.*

Public Citizen argues that the final CBI Rule deviated from the NPRM because the final rule was the opposite of the proposed rule and because the final rule is broader in scope than the proposed rule. (Pl.'s Mem. Supp. Summ. J. at 13-14.) Specifically, Public Citizen alleges that the final rule altered the subject matter of the proposed rule in four ways:

> First, NHTSA proposed only to establish non-binding *presumptions* rather than binding *categorical rules*. Second, it proposed to codify existing practice rather than to reverse existing practice. Third, it mentioned only considering whether the release of information would cause competitive harm, not whether doing so would impair NHTSA's ability to collect information. Fourth, it extended the scope of its proposal from consumer complaints, warranty claims, and property damage to include production numbers and field reports as well.

(*Id.* at 14 (emphasis in original).) Additionally, NHTSA further expanded the scope of the ultimate final rule from its initial final rule by determining that common green tire

13

information and the last six digits of VINs were also exempt from disclosure under FOIA. (*Id.*)  Defendant contends that the logical outgrowth test was satisfied because the NPRM "invited comment on the manner in which EWR data should be treated for purposes of confidentiality," and therefore "[t]hose interested in how the agency would treat EWR information . . . should have anticipated that the outcome of the rulemaking on the confidentiality of the data fell within a full range of possible outcomes, from no resolution on confidentiality to determination that certain information would be deemed confidential." (Def. Mineta's Mem. Supp. Summ. J. at 38.)  The defendant also argues that because some commentators advocated for the categorical treatment of EWR data as confidential in their comments, the proposed rule provided adequate notice.  (*Id.*)  NHTSA claims that reliance on these comments is not an attempt to "bootstrap notice from a comment," as prohibited by *Fertilizer Institute*, 935 F.2d at 1312, but rather that the comments serve as evidence that the logical outgrowth test as set forth in *Northeast Maryland*, 358 F.3d at 951-52, is satisfied because they demonstrate that interested parties were able to anticipate the potential policy change and comment on it by reading the proposed rule.  (Def. Mineta's Mem. Supp. Summ. J. at 42.)

As stated above, the proposed rule contemplated the establishment of non-binding presumptions that certain classes of information required to be submitted under EWR regulations would not cause competitive harm if disclosed under FOIA, while the final rule created categorical determinations of confidentiality as to those same classes of information

14

and to other classes of information required under EWR regulations. *Compare* 67 Fed. Reg. 21,198 *with* 69 Fed. Reg. 21,409. The NPRM specifically laid out how the classes of information or material submitted to the agency that were deemed presumptively confidential or non-confidential would be handled and treated. 67 Fed. Reg. at 21,200. If the information is deemed to be presumptively non-confidential, then the submitter of the information may attempt to rebut that presumption. *Id.* If the information submitted falls within one of "the categories of information for which a presumption of confidentiality attaches," confidential treatment of that information will not take effect unless the submitter takes the appropriate steps to certify that "measures have been taken to maintain its confidentiality and that it has not been released to the public." *Id.* Furthermore, the NPRM specifically states that the agency was seeking comments on "whether the agency should presumptively determine that these . . . types of documents [EWR information] would or would not cause competitive harm." *Id.* From the plain reading of the NPRM, it had to be assumed that the same options to rebut such a presumption or support such a presumption, as stated earlier, would apply to the EWR information.

In the publication of the final rule in the Federal Register, 69 Fed. Reg. 21,409, however, NHTSA noted that it would not re-establish the presumption designation to EWR data in a footnote, stating:

> In contrast to Appendix B, we continue to believe it appropriate that the class determinations in Appendix C (applicable to EWR data) include a determination that the covered classes are exempt from disclosure, rather than a determination that they are "presumptively" exempt from disclosure. . . . The

> EWR data do not give rise to the same concern leading us to reestablish the "presumption" applicable to other class determinations.

69 Fed. Reg. 21,414 n.9. The NPRM failed to give notice that parties submitting comments

might have to argue that the presumption designation to information should continue to apply

to the EWR data. Therefore, the parties arguing against the proposed rule were prejudiced

by the fact that they were not given the adequate opportunity to comment on the removal of

the presumption designation and the effect that such a removal would have. *See First*

*American Discount Corp. v. Commodity Futures Trading Comm'n*, 222 F.3d 1008, 1015

(D.C. Cir. 2000). In fact, the final rule was not only the direct opposite of the proposed rule

in that information deemed to be presumptively non-confidential had been deemed

categorically confidential, but the agency pulled a "switcheroo" in completely removing the

presumption label as to EWR data. *Envtl. Integrity Project*, 425 F.3d at 996-98. Therefore,

the commenters did not know "which *particular aspects* of its proposal are open for

consideration." *Id.* at 998 (emphasis in original). While commenters both argued that EWR

information should be deemed confidential under the TREAD Act and that the information

should be deemed presumptively confidential as opposed to presumptively non-confidential,

there was no discussion by the commenters of the legal basis for, or consequences of, the

removal of the presumption designation, besides that fact that the commenters interpreted

EWR data to have been deemed confidential by the TREAD Act itself. Since interested

parties had no basis to anticipate the shift in policy by NHTSA and because the final rule

deviates so sharply from the proposed rule, NHTSA's final CBI rule is *not* a logical

outgrowth of the NPRM. Accordingly, NHTSA did not provide adequate notice and opportunity to comment under the APA. Thus, having concluded that the agency failed to provide adequate notice and opportunity to comment on the proposed rule, the Court will not address the parties' other claims. *See Northeast Maryland*, 358 F.3d at 947; *Envtl. Integrity Project*, 425 F.3d at 996.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART [#17] plaintiff's Motion for Summary Judgment; GRANTS IN PART and DENIES IN PART [#18] Intervenor-defendant Rubber Manufacturers Association's Motion for Summary Judgment; GRANTS IN PART and DENIES IN PART [#22] Intervenor-defendant Alliance of Automobile Manufacturers, Inc.'s Motion for Summary Judgment; GRANTS IN PART and DENIES IN PART [#27]defendant Norman Y. Mineta's Cross-Motion for Summary Judgment; and REMANDS the matter to NHTSA for whatever further action it may wish to take consistent with this holding. An appropriate Order will issue with this Memorandum Opinion.

RICHARD J. LEON
United States District Judge